UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

STEVEN MADDEN, LTD.,

                    Plaintiff,                    18 Civ. 2043

        -against-                                 OPINION

JASMIN LARIAN, LLC,

                    Defendant.

----------------------------------------X

JASMIN LARIAN, LLC,

        Counterclaim Plaintiff,

        -against-

STEVEN MADDEN, LTD, and STEVEN MADDEN,

        Counterclaim Defendants.

----------------------------------------X

A P P E A R A N C E S:


        Attorneys for Counterclaim Plaintiff

        KELLEY DRYE & WARREN LLP
        101 Park Avenue
        New York, NY 10178
        (212) 808-7897
        By: Andrea Lynne Calvaruso

        LATHAM & WATKINS LLP
        1 Newark Center, 16th Floor
        Newark, NJ 07101
        (973) 639-7572
        By: Paul Andrew Rosenthal

Attorneys for Counterclaim Defendants

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
New York, NY 10020
By: Lauren Danielle Toaltoan

**Sweet, D.J.**

Counterclaim defendants, Steven Madden, Ltd. ("SML" or
the "Company") and Steven Madden ("Madden") (collectively, the
"Counterclaim Defendants") have moved pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure to dismiss the
counterclaims of the counterclaim plaintiff Jasmin Larian, LLC
d/b/a Cult Gaia ("Cult Gaia" or the "Counterclaim Plaintiff")
for failure to state a claim. Based upon the following
conclusions, the motion is granted.

## I.   **Prior Proceedings**

SML filed its complaint (the "Complaint") on March 6,
2018, seeking a declaratory judgment concerning Cult Gaia's
purported trade dress rights to one of its products. Compl., ECF
No. 1. On May 14, 2018, Cult Gaia filed its Answer and
Counterclaims to the Complaint ("the Counterclaims") against SML
and Madden in his individual capacity. Countercls., ECF No. 13.
Counterclaim Defendants then filed the instant motion to dismiss
the Counterclaims against Madden on June 6, 2018, which was
heard and marked fully submitted on June 29, 2018. Countercl.
Defs.' Mot. to Dismiss, ECF No. 20.

The Counterclaims allege trade dress infringement under the Lanham Act, unfair competition under New York common law, and deceptive practices under New York General Business Law ("GBL") § 349. *See* Countercls., ECF No. 13, at 15-17.

## II. Facts

SML (including its subsidiaries) is a publicly traded company currently trading on the NASDAQ Global Select Market under the symbol "SHOO." Steven Madden, Ltd. Annual Report (Form 10-K) (Dec. 31, 2016) (the "SML 10-K"), at 1.[1] SML designs, sources, markets and sells fashion-forward name brand and private label footwear, fashion handbags, and accessories. *Id.* at 2. SML's products are marketed through its own retail stores within the United States, Canada, Mexico, and South Africa, as well as e-commerce websites, departments stores, luxury retailers, and other outlets throughout the United States and internationally. *Id.* at 5. SML has operated more than 185 retail locations in the United States and has sold its products in an additional 2,500 locations of more than 17 department stores, including Macy's, Nordstrom, Dillard's, Belk, and Lord & Taylor.

---

[1]     The Counterclaims incorporate by reference SML's 2016 Form 10-K filing. Countercls. ¶ 33; Countercl. Pl.'s Opp. Br., ECF No. 23, at 10 n.7. Consequently, in deciding the instant motion, the Court has considered the facts contained in the SML 10-K in addition to the factual allegations set forth in the Counterclaims. *See, e.g.*, *Int'l Audiotext Network, Inc. v. Am. Telephone & Telegraph Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

*Id.* at 6. SML employed 3,578 individuals as of 2016, *id.* at 8, and reported net sales of $1.55 billion in 2017, Countercls. at 1.

Madden is the founder of SML and serves as its Creative and Design Chief. Countercls. ¶ 30; SML 10-K at 1.

Cult Gaia is a Los Angeles-based fashion startup company that has designed, promoted, distributed, and sold handbags, accessories, and clothing since as early as 2012. Countercls. ¶ 7. Since 2013, Cult Gaia has continually promoted and sold its signature Ark handbag (the "Ark Bag"). *Id.* ¶ 8. Cult Gaia owns protectable rights in the distinct combination of elements that comprise the Ark Bag, namely, structured and flat front and back panels made of thin, uniformly-sized strips of rigid material, such as bamboo; arranged in an interlocking manner to form three concentric half circles creating a see-through sunburst design; topped by horizontal strips and a handle made of the same material with a curved, tapering cutaway, with a curved side panel made of interlocking pieces of the same material and in the same width as the pieces comprising the front and back panels; and spacers in the form of circular beads that connect the handle pieces that are either clear or

4

the same color as the bag (collectively, the "Ark Trade Dress").
*Id.* ¶ 9.

Cult Gaia has invested considerable resources in
connection with the promotion of bags bearing the Ark Trade
Dress. *Id.* ¶ 13. In particular, because the exterior of the Ark
Bag bears no label visible to consumers, Cult Gaia has
extensively used, advertised, and promoted the Ark Trade Dress
in connection with its business and goods to ensure that
consumers recognize the mark as source-identifying. *Id.* ¶ 14.

Cult Gaia has also promoted the Ark Trade Dress on its
website, located at www.cultgaia.com, and through its social
media accounts, such as Instagram and Facebook. *Id.* ¶ 15. For
example, a large number of photos on the company's website and
social media pages feature the Ark Trade Dress. *Id.* Many of
these photos are close-ups of the Ark Bag bearing the Ark Trade
Dress, and do not include the model's face or identifying
features. *Id.*

Cult Gaia's sales of the Ark Bag have steadily
increased since their first introduction, exceeding $4,500,000
in 2017. *Id.* ¶ 16. Since its introduction, the Ark Bag has
received extensive, continuous, and often unsolicited attention

5

and acclaim from many media outlets. *Id.* ¶ 19. The media coverage has referred to Cult Gaia's handbags as "it bags" and has described them as "recognizable," "Insta-famous," and the "signature" of the Cult Gaia brand and its "cult following." *Id.* ¶ 20. For example, publications such as *In Style*, *The Zoe Report*, *People*, *Observer*, *Who What Wear*, and *PopSugar* have written about the Ark Bag's popularity. *Se id.* ¶¶ 21-22 & Ex. A. Many famous celebrities, including, but not limited to, Jessica Alba, Ciara, Michelle Williams, and Emma Roberts, have been photographed carrying handbags featuring the Ark Trade Dress. *Id.* ¶ 23. Social media celebrities, influencers, and prominent bloggers have also created significant exposure for the Cult Gaia brand and its signature Ark Bag by posting photographs of themselves carrying the Ark Bag on their social media accounts to millions of their followers. *Id.* ¶ 24.

Since the rise in popularity of the Ark Bag, other companies have attempted to create imitation bags bearing exact or near exact copies of the Ark Trade Dress. *Id.* ¶ 25. Articles reporting on the intentional copying of Cult Gaia's Ark Trade Dress have described the imitation bags as "dead ringer[s] for the Cult Gaia Ark [B]ag," "very close cop[ies]," "lookalike[s]," "knockoff[s]" and "dupe[s]". *Id.* ¶ 26. Since becoming aware of such copies, Cult Gaia has expended significant resources to

6

stop the sale of such products and has been successful in stopping various imitators from continuing to sell products bearing unauthorized copies of the Ark Trade Dress. *Id.* ¶ 28.

On or about February 16, 2018, Cult Gaia sent a letter to SML demanding that it immediately cease, among other things, sales, distribution, and promoted of a handbag it calls the "BShipper" (the "BShipper Bag"), which Cult Gaia claims is an unauthorized copy of its Ark Bag. *Id.* ¶¶ 13, 35.

The Counterclaims allege trade dress infringement under the Lanham Act, unfair competition under New York common law, and deceptive practices under New York GBL § 349 against the Company and Madden, arising from the sale, distribution, and promotion of the BShipper Bag. *Id.* ¶¶ 45-60.

## III. **Applicable Standard**

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions."). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

Additionally, while a plaintiff may plead facts alleged upon information and belief "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "accompanied by a statement

8

of the facts upon which the belief is founded," *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006) (internal quotations and citations omitted). Moreover, the pleadings "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## IV. The Motion to Dismiss the Counterclaims Against Madden is Granted

### A. Lanham Act Claim

"Under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active[,] conscious force [behind the corporation's] infringement." *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014). A

corporate officer is considered a "moving, active, conscious force" behind a company's infringement when the officer "was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 155 (E.D.N.Y. 2016) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, No. 06 Civ. 3140, 2011 WL 3678802, at *4 (S.D.N.Y. Aug. 19, 2011)); *see also Katiroll*, 33 F. Supp. 3d at 367 (a showing that an officer "authorized and approved the acts of unfair competition which are the basis of [the corporation's] liability . . . is sufficient participation in the wrongful acts" to subject the officer to liability). Additionally, courts in other circuits have imposed liability on individual defendants who were the "principal architect" of a corporation's trademark infringement. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:24 (5th ed.) (citing *Brittingham v. Jenkins*, 914 F.2d 447 (4th Cir. 1990)); *Taylor Made Golf Co., Inc. v. MJT Consulting Grp., LLC*, 265 F. Supp. 2d 732, 747 (N.D. Tex. 2003). "[I]n determining whether the officer's acts render him individually liable, it is immaterial whether . . . he knows that his acts will result in an infringement." *Chloe*, 2011 WL 367882, at *4 (citation omitted).

10

In support of Madden's individual liability, Cult Gaia has alleged the following:

(1) Madden is the founder of the Company and serves as its Creative and Design Chief, Countercls. at 6 & ¶ 30;

(2) Madden has been continuously and systematically accused of unfairly and wantonly infringing on the intellectual property of countless different companies in the fashion industry, *id.* at 6;

(3) Madden is the principal architect of the Company's infringement of the Ark Trade Dress, *id.* ¶ 31;

(4) Madden is a moving, active, and conscious force behind the Company and its product designs, *id.* ¶¶ 3, 32;

(5) The Company's corporate documents confirm its dependence on Madden, noting in the SML 10-K that "[t]he growth and success of our Company since its inception more than a quarter century ago is attributable, to a significant degree, to the talents, skills, and efforts of our founder and Creative Design Chief, Steven Madden," *id.* ¶ 33;

(6) Madden has willfully and intentionally used the
    Ark Trade Dress, or a near identical copy
    thereof, in connection with the manufacture,
    distribution, promotion, and sale of its
    infringing product, *id.* ¶ 36;

(7) Madden has "offered the [BShipper Bag] for sale
    without permission, authority or license from
    Cult Gaia and on information and belief, such
    actions were taken willfully, intentionally, and
    in bad faith with full knowledge of Cult Gaia's
    intellectual property rights and with the
    intention to trade off of, and benefit from, Cult
    Gaia's reputation and the goodwill it has created
    among its customers," *id.* ¶ 39; and

(8) After receiving actual notice that Cult Gaia
    objected to its BShipper bag as an infringement
    of Cult Gaia's rights in the Ark Trade Dress,
    Madden "created more versions of the [BShipper
    Bag] in additional colors, and has placed orders
    to manufacture additional [BShipper Bags]. Such
    conduct constitutes willful infringement and
    demonstrates [Madden's] willful disregard for
    Cult Gaia's intellectual property rights." *Id.* ¶
    40.

For the following reasons, these allegations are insufficient to state a Lanham Act claim against Madden personally.

First, Madden's title of Creative and Design Chief cannot on its own give rise to his individual liability. Courts in this Circuit have held that a defendant is not considered a "moving, active, conscious force" if the only allegation made by the plaintiff is that the defendant holds a particular title, without alleging that the defendant authorized or approved any allegedly infringing action. *See, e.g.*, *Kuklachev v. Gelfman*, No. 08 Civ. 2214, 2009 WL 805095, at \*5 (E.D.N.Y. Mar. 25, 2009) (no basis for individual liability where plaintiff merely claimed that defendants were corporate officers of infringing company); *Lee Myles Auto Group, LLC v. Fiorillo*, No. 10 Civ. 6267, 2010 WL 3466687, at \*7 (S.D.N.Y. Aug. 25, 2010) (same). *See also Campers' World Int'l v. Perry Ellis Int'l*, No. 02 Civ. 453, 2002 WL 1870243, at \*5 (S.D.N.Y. Aug. 13, 2002) ("A corporate officer is not personally liable for torts committed by others on behalf of the corporation solely by virtue of his or her status as a corporate officer.").

Cult Gaia contends that this rule does not apply here because Madden's title, Creative and Design Chief, "imparts more information than that of the title of President or CEO" and "makes clear that [Madden] is the [C]ompany's chief product designer who is ultimately responsible for the [C]ompany's product designs, including the infringing design at issue in this litigation." *See* Countercl. Pl.'s Opp. Br., ECF No. 23, at 9. Cult Gaia further insists that SML's 10-K, which attributes the growth and success of SML generally to Madden's "talents, skills and efforts," illustrates SML's "dependence on [Madden] and his role as its chief designer." *Id.* This argument falls flat. Neither Madden's title nor the language in the SML 10-K elucidates Madden's role in the design or acquisition of certain products, let alone suggests that Madden had any personal involvement in the design and sale of the BShipper bag specifically.

Second, the allegation that Madden has been "continuously and systematically accused of unfairly and wantonly infringing on the intellectual property of countless different companies in the fashion industry," Countercls. at 6, even assumed true, does not reasonably support the inference that Madden is liable for the misconduct alleged *in this particular case.*

14

Third, the allegations that Madden is the "principal architect" of the alleged wrongdoing, *id.* ¶ 31, and the "moving, active, and conscious force" behind the Company and its product design, *id.* ¶ 32, are mere legal conclusions and not entitled to a presumption of truth. *See Canon U.S.A., Inc. Trading v. F&E Trading LLC*, No. 15-CV-6015, 2017 WL 112515, at *4 (E.D.N.Y. Sept. 29, 2017) ("[T]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice.").

Lastly, the Court rejects Cult Gaia's argument that Madden's liability is adequately asserted because the Counterclaims allege that SML and Madden "willfully and intentionally used the Ark Trade Dress in connection with the manufacture, distribution, promotion, and sale" of the BShipper Bag; "offered the [BShipper Bag] for sale without permission, authority, or license from Cult Gaia" and did so "willfully, intentionally, and in bad faith with full knowledge of Cult Gaia's intellectual property rights and with the intention to trade off of, and benefit from, Cult Gaia's reputation and the goodwill it has created among its customers;" and "created more versions of" and "placed orders to manufacture" more BShipper Bags after receiving notice that Cult Gaia objected to the

15

BShipper bag as an infringement of the Ark Trade Dress. *See* Countercl. Pl.'s Opp. Br., ECF No. 23, at 4-5. These assertions contain no factual allegations as to Madden's specific role in the purported infringement of the Ark Bag, but merely state conclusory allegations that conflate the Company's actions with Madden's own. Indeed, Cult Gaia's memorandum of law in opposition to the motion to dismiss makes clear that these allegations are based upon the acts of SML, rather than upon any individual acts of Madden. *See* Countercl. Pl.'s Opp. Br., ECF No. 23, at 4 (arguing that many allegations in the Counterclaims "apply with equal force to both [SML] and [Madden]" because the allegations are with respect to "'Steve Madden,' which the Counterclaims clearly define as collectively referring to *both* [SML] and [Madden]"). However, these allegations, which are made as to the Counterclaim Defendants collectively, are "'naked assertion[s]' devoid of 'further factual enhancement'" regarding Madden's actual role, and therefore fail to plausibly establish his personal liability. *Houbigant, Inc. v. IMG Fragrance Brands, LLC*, 679 F. Supp. 2d 395, 402 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 557).

The cases cited by Cult Gaia in support of its contention that the Counterclaims sufficiently assert Madden's individual liability are inapposite. In those cases, the

16

plaintiffs presented sufficient facts from which the individual defendants' actual participation in the alleged wrongdoing could be reasonably inferred, either because the plaintiff alleged precise facts demonstrating the individual defendant's involvement or because the individual defendant was an officer or shareholder of a smaller, privately-held company. *See, e.g.*, *Campers' World Int'l*, 2002 WL 1870243, at *5 (plaintiff alleged, among other things, that the individual defendant "caused a different product identification to be attached to the [product] at issue to conceal ongoing misconducts" and "intentionally concealed [during settlement discussions] . . . that the infringing [product] had been manufactured and sold"); *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 504 (S.D.N.Y. 2014) (individual defendant was president of family-run business and plaintiff alleged that wrongful conduct was done with his "active assistance, cooperation, acquiescence and procurement," and that he "derived financial benefit therefrom"); *Elastic Wonder, Inc. v. Posey*, No. 13 Civ. 5603, 2015 WL 273691, at *4 (S.D.N.Y. Jan. 22, 2015) (individual defendant was infringing corporation's sole corporate officer and employee and plaintiff alleged facts regarding his specific awareness and direction of the infringing activities); *Fugazy Int'l Travel Grp., Inc. v. Stargazer, Ltd.*, No. 02 Civ. 3373, 2003 WL 115220, at *2 (S.D.N.Y. Jan. 10, 2003)

(plaintiff alleged that one individual defendant was the direct,
officer, and shareholder of small corporation and the other was
its general manager).[2] Here, by contrast, the conclusory
allegations in the Counterclaims are insufficient to establish
that Madden, as a corporate officer of a billion-dollar company
with thousands of employees, was in any way personally involved
with the alleged infringement of the Ark Bag.

        For these reasons, Cult Gaia has not met its burden of
plausibly alleging that Madden is individually liable for the
purported infringement of the Ark Bag, and the Lanham Act claim
against him is dismissed. *Cf. Carell v. Shubert Org., Inc.*, 104
F. Supp. 2d 236, 271 (S.D.N.Y. 2000) (dismissing claims against
individual defendants where complaint identified defendants' job
titles and alleged defendants' involvement in company's
infringement but provided no details or description of concrete
acts to demonstrate personal liability).

---

[2]     It is also worth noting that the Court in *Fugazy* applied the pleading
standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *See Fugazy*, 2003
WL 115220, at *2 ("A claim will be dismissed pursuant to Fed. R. Civ. P.
12(b)(6) when it appears beyond a reasonable doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle him to
relief."). Four years after *Fugazy*, the Supreme Court decided *Twombly*, which
rejected *Conley's* "no set of facts" language and set a stricter pleading
standard. *See Twombly*, 550 U.S. at 560-70.

## B. Unfair Competition Under New York Common Law

To establish a claim for unfair competition under New York common law, "the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent." *Innovation Ventures*, 176 F. Supp. 3d at 157 (quoting *Katiroll*, 33 F. Supp. 3d at 370). Accordingly, for the reasons discussed with respect to the Lanham Act claim, *see supra* Part IV.B, Cult Gaia's unfair competition claim against Madden is also dismissed. *Cf*. *KatiRoll*, 33 F. Supp. 3d at 370 (conducting one individual liability analysis for both Lanham Act claim and common law unfair competition claim).

## C. New York GBL § 349

Under New York law, a corporate officer who participates in the commission of a tort, even if he acts on behalf of the corporation and in the course of his corporate duties, may be held individually responsible. *See Mayfield v. Asta Funding, Inc.*, 95 F.3d 685, 701 (S.D.N.Y. 2015) (citing *Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc.*, 603 F. Supp. 339, 341 (S.D.N.Y. 1985)).

"In cases where courts have found individual
defendants to have participated in the [wrongdoing] at issue,
the complaints specifically alleged personal participation,
rather than mere awareness or control." *Reynolds v. Lifewatch,
Inc.*, 136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015) (citations
omitted); *see also Mayfield*, 95 F.3d at 701 (noting that
individual defendants may not be held liable for GBL violations
by virtue of their employment, but rather on the basis of "their
*own conduct* that violates the GBL") (emphasis added). As
previously discussed, *see supra* Part IV.B, Cult Gaia's
conclusory and vague allegations in the Counterclaims, which
frequently refer to the Counterclaim Defendants collectively,
fail to describe Madden's specific role in the purported
infringement of the Ark Bag. As such, the allegations are
insufficient to demonstrate Madden's personal involvement in the
alleged misconduct. *Cf. Reynolds*, 136 F. Supp. 3d at 526
(finding that plaintiff's conclusory allegations that the
individual defendants "had personal involvement with their
respective Defendants' corporate business activities and have
been involved in the decision making relating to the [alleged
misconduct;]" "controlled the day-to-day operations of the
[d]efendant companies and developed aspects of business
activities, such as sales and marketing plans and activities[;]"
and "were aware of, or should have been aware of, the improper

20

business practices and should have taken action to prevent the improper practices" were insufficient to establish individual liability) (internal quotations and citations omitted); *Naftali v. N.Y. Deferred Exch. Corp.*, No. 15 Civ. 7152, 2017 WL 4325725, at *10 (E.D.N.Y. Aug. 15, 2017), *report and recommendation adopted*, 2017 WL 4286260 (E.D.N.Y. Sept. 26, 2017) (finding that plaintiffs' allegations that individual defendant was an officer, director, and shareholder of corporate defendant and used the corporate defendant to "advance his own business[;]" that the corporate defendant allowed him to "keep total control over the business[;]" and their repeated conclusory references to his participation in the misconduct along with the corporate defendant were insufficient to establish personal liability).

The motion to dismiss the GBL claim against Madden is therefore granted.

## V.   Cult Gaia's Request for Leave to Amend Its Counterclaims Against Madden is Denied

Finally, Cult Gaia requests leave to amend. "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant

21

or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted); *see also Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (noting that a district court has "broad" discretion in ruling on a motion to amend). The court may deny leave if the amendment "(1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudice, or (4) would be futile." *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 303 (S.D.N.Y. 1996), *aff'd*, 116 F.3d 465 (2d Cir. 1997). In this Circuit, courts may deny a plaintiff's request for leave to amend a complaint as futile if the plaintiff's claims do not withstand the scrutiny of a motion to dismiss. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

Here, Cult Gaia has requested leave to amend in two paragraphs of its opposition to Counterclaim Defendants' motion to dismiss the claims against Madden. Cult Gaia's request neither identifies any additional factual allegations about Madden's involvement that would be included in the amended counterclaims, nor explains how an amendment would remedy the deficiencies of the current Counterclaims. Perhaps tellingly, Cult Gaia failed to even address the futility of amending the

Counterclaims, and instead focused exclusively on the issues of
prejudice, undue delay, and bad faith. *See* Countercl. Pl.'s Opp.
Br., ECF No. 23, at 10-11.

Accordingly, Cult Gaia's request for leave to amend
the Counterclaims is denied. *See, e.g.*, *WC Capital Management,
LLC v. UBS Securities, LLC*, 711 F.3d 322 (2d Cir. 2013)
(affirming district court's denial of request for leave to amend
where plaintiff "conclusorily requested [such] leave . . . in
two sentences in its opposition [brief], without specifying what
additional factual allegations it would include if leave were
granted, or how an amended complaint would cure the deficiencies
the District Court identified in its original complaint"); *Cruz
v. Credit Control Servs., Inc.*, No. 17 Civ.1994, 2017 WL
5195225, at *9 (E.D.N.Y. Nov. 8, 2017) (denying request to amend
the complaint where plaintiff failed to provide "any details
regarding what changes are required in order to survive . . . a
potential future motion [to dismiss]"); *Lundt v. City of N.Y.*,
No. 12 Civ 1737, 2013 WL 5298458, at *9 (S.D.N.Y. Sept. 20,
2013) (rejecting request to amend where plaintiff failed to
provide a proposed amended complaint or otherwise identify how
he would cure the deficiencies in his original complaint).

23

## VI. **Conclusion**

Based on the conclusions set forth above, the
Counterclaims against Madden are dismissed and Cult Gaia's
request for leave to amend is denied.

It is so ordered.

New York, NY
January   , 2019

                              _____
                                   ROBERT W. SWEET
                                     U.S.D.J.

24

**VI. Conclusion**

Based on the conclusions set forth above, the
Counterclaims against Madden are dismissed and Cult Gaia's
request for leave to amend is denied.

It is so ordered.

New York, NY
January '7-2019

ROBERT W. SWEET
U.S.D.J.